1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13

14

15

16

17

18

| DAVID WEBB, | ) | Case No. C 08-04913 PVT |
|---|---|---|
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT OLIVE GARDEN ITALIAN RESTAURANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| v. | ) | |
| OLIVE GARDEN ITALIAN RESTAURANTS, ET AL., | ) | |
| Defendants. | ) | **[Docket No. 43]** |

**INTRODUCTION**

19

20

21

22

23

24

Defendant Olive Garden Italian Restaurant/Darden Restaurants moves to dismiss the second amended complaint. ("Olive Garden"). Plaintiff David Webb proceeding *pro se* opposes the motion. Pursuant to Civ. L.R. 7-1(b), the motion was taken under submission. Having reviewed the papers and considered the arguments of counsel and plaintiff, defendant Olive Garden's motion to dismiss the second amended complaint is dismissed with leave to amend.[1]

25

26

27

28

_____

[1]    The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

1

**BACKGROUND**

2   On July 2, 2008, plaintiff Webb dined with two female companions at the Olive Garden

3   Restaurant located in Palo Alto, CA.  During the course of the meal, he alleges that he

4   befriended an on-duty floor supervisor named Emili.  Plaintiff Webb later escorted his two

5   female companions to their respective cars and returned to the restaurant to speak further with

6   Emili.  Based on their conversation which lasted approximately 10 minutes, plaintiff Webb

7   believed that Emili was receptive to his romantic overtures and that he could return to speak with

8   her again.  Specifically, plaintiff Webb alleges that: "Emili sincerely told me that she had a

9   boyfriend but that we could continue communicating and for the immediate future, I could come

10  by the restaurant to see and talk with her from time to time.  I left with the clear understanding

11  that we would engage in mutual conversation until Emili felt more comfortable to exchange

12  contact information."

13  On July 3, 2008, plaintiff Webb returned to the restaurant in an effort to resume contact

14  with Emili.  However, the restaurant was temporarily closed because the sewage system was not

15  working properly and at least eight patrons were milling outside in the parking lot.  In the

16  parking lot, plaintiff Webb informed a young male restaurant employee that he wanted to extend

17  an invitation to Emili.  The young male restaurant employee went inside the restaurant and

18  plaintiff Webb waited outside for her.  Instead of meeting with Emili however, a restaurant sales

19  manager named Jacob Palpallatoc approached plaintiff Webb with a repeated pushing motion of

20  his hands.  Mr. Palpallotoc stated to plaintiff Webb that he was not welcome at the restaurant

21  because of his efforts "to solicit the intimate affections of Emili."  Plaintiff Webb alleges that

22  Mr. Palpallotoc had a "menacing look in his eyes" and stood in a "combative posture."  In

23  response to Mr. Palpallotoc's statements, plaintiff Webb identified himself and again stated that

24  he merely wanted to invite Emili to a professional event.  Mr. Palpallotoc stated that Emili

25  wanted nothing from plaintiff Webb and that she had told him "a lot of shit of how you are

26  interested in fucking her" and he was not going to let that happen.  Plaintiff Webb objected to the

27  public statements made by Mr. Palpallatoc as the restaurant patrons watched.  He felt that the

28  restaurant patrons viewed him as a troublemaker, or worse, a criminal.  Indeed, several of the

restaurant patrons

1   scurried to their cars and others backed away from him.  Mr. Palpallotoc continued to approach

2   plaintiff Webb and came within two feet of his comfort zone, which caused him to take two steps

3   backwards.  At that point, another person that plaintiff Webb describes as a large pacific

4   islander, and bearing a badge, emerged from the restaurant.  That person approached Mr.

5   Palpallotoc and plaintiff Webb and pounded his closed fist into his other open hand.  Mr.

6   Palpallotoc informed plaintiff Webb that that person was his back up.  Plaintiff Webb objected to

7   the treatment by both Mr. Palpallatoc and the person plaintiff Webb describes as a large pacific

8   islander.  Plaintiff Webb alleges that the person he describes as a large pacific islander continued

9   his threatening and ominous behavior throughout the course of his ten minute conversation with

10  Mr. Palpallotoc.        Plaintiff Webb then noticed a woman with "stern eyes" observing the

11  exchange between himself, Mr, Palpallotoc and the large pacific islander.  Plaintiff Webb asked

12  Mr. Palpallatoc and the large pacific islander each to provide him with their business cards.

13  Only Mr. Palpallotoc acceded to the request.  The large pacific islander remained in close

14  proximity to where plaintiff Webb stood and began to approach him in "quick step."  Plaintiff

15  Webb asked Mr. Palpallotoc to stop his colleague from continuing his threatening behavior.

16          Thereafter, the same woman standing nearby instructed both Mr. Palpallotoc and the

17  large pacific islander to go inside the restaurant.  She stated, " . . . [I am the] General Manager of

18  the restaurant and knew I had to step in at that moment before things got anymore out of hand

19  because I am responsible for their actions . . . ."  The woman identified herself to plaintiff Webb

20  as Lisa Chorello.  Defendant Chorello told plaintiff Webb that she would talk to Mr. Palpallotoc

21  and the large pacific islander about their behavior.  Plaintiff Webb informed her that he would

22  write the owners of the restaurant about the incident.  She then provided her name to plaintiff

23  Webb by writing it on the back of Mr. Palpallotoc's business card.

24          Pursuant to the order granting defendant Olive Garden's motion to dismiss with leave to

25  amend dated March 19, 2009, plaintiff Webb filed a second amended complaint alleging claims

26  of assault, defamation, intentional infliction of emotional distress and negligent supervision.

27  ("March 19, 2009 Order").  Plaintiff Webb alleges jurisdiction pursuant to 28 U.S.C. §§ 1331

28  and 1332.  He seeks damages in excess of $1 million.

1 **LEGAL STANDARD**

2      A complaint may be dismissed for failure to state a claim upon which relief can be

3 granted.  Fed. R. Civ. P. 12(b)(6).  The dismissal may be based on either the lack of a cognizable

4 legal theory or the absence of sufficient facts under a cognizable legal theory.  *Balistreri v.*

5 *Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990) and *Robertson v. Dean Witter Reynolds,*

6 *Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the

7 allegations in a complaint are taken as true and construed in the light most favorable to the

8 nonmoving party.  *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.

9 1995).  "A complaint should not be dismissed unless a plaintiff could prove no set of facts in

10 support of his claim that would entitle him to relief."  *Id.*  Generally, a motion to dismiss for

11 failure to state a claim is viewed with disfavor and rarely granted.  *Gilligan v. Jamco Develop.*

12 *Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

13      However, mere conclusions couched in factual allegations are not sufficient to state a

14 cause of action.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).  *See also, McGlinchy v. Shell*

15 *Chem Co.,* 845 F.2d 802, 810 (9th Cir, 1988).  The complaint must aver "[f]actual allegations []

16 enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,*

17 500 U.S. -, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41

18 (1957)).  "A claim has facial plausibility when the pleaded factual content allows the court to

19 draw the reasonable inference that the defendant is liable for the misconduct alleged."  *John D.*

20 *Ashcroft, et al. v. Javaid Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1941, 173 L.Ed.2d 868 (2009).

21 "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the

22 reviewing court to draw on its experience and common sense."  *Id.*  "[L]eave [to amend] shall be

23 freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Additionally, a federal court may

24 liberally construe the "inartful pleading" of parties appearing *pro se.  Hughes v. Rowe,* 449 U.S.

25 5, 9, 101 S.Ct. 173, 176 (1980).

26 **DISCUSSION**

27      In the second amended complaint, plaintiff Webb alleges the following claims: (1)

28 assault; (2) defamation; (3) intentional infliction of emotional distress; and (4) negligent

1  supervision.  Defendant Olive Garden moves to dismiss all of the claims alleged in the second

2  amended complaint and further moves to strike the prayer for punitive damages.  Each of these

3  alleged claims are considered in turn.

4  **I.      Assault**

5         "Generally speaking, an assault is a demonstration of an unlawful intent by one person to

6  inflict immediate injury on the person of another then present." *Lowery v. Standard Oil Co. of*

7  *California,* 63 Cal. App. 2d 1, 6-7 (1944).  *See also, Medora v. City & County of San Francisco,*

8  2007 WL 2522319 *5 (N.D. Cal.));  and *De La Cerra Frances v. De Anda,* 224 Fed. Appx. 637,

9  639 (9th Cir. 2007).  The tort of assault is complete when the anticipation of harm occurs.

10 *Kiseskey v. Carpenters' Trust for Southern California,* 144 Cal. App. 3d 222, 232 (1983).  "A

11 civil action for assault is based on an invasion of the right of a person to live without being put in

12 fear of personal harm." *Lowery v. Standard Oil Co. of California,* 63 Cal. App. 2d at 7.

13        Here, plaintiff Webb alleges that Mr. Palpallotoc approached him with a pushing motion

14 of his hands and came within two feet of his comfort zone which caused plaintiff to take two

15 steps backwards in an effort to avoid any contact with him.  Plaintiff Webb alleges that he took

16 two steps backwards because Mr. Palpallotoc came within two feet of his comfort zone.  He

17 further alleges that Mr. Palpallotoc had a "menacing look in his eyes" and stood in a combative

18 stance.  He does not allege that he anticipated harm or that he was in fear of immediate injury.

19 Indeed, moments thereafter, plaintiff Webb requests that Mr. Palpallotoc provide him with his

20 business card.  The act of using a pushing motion with hands as alleged, in and of itself, fails to

21 demonstrate an intent by Mr. Palpallotoc to inflict immediate injury.

22        Plaintiff Webb also alleges that the person he describes as a large pacific islander

23 committed an assault against him.  Specifically, he alleges that the large pacific islander

24 approached him and repeatedly pounded his clenched fist into an open hand as he approached

25 him and stood nearby during his conversation with Mr. Palpallotoc.  Again, the facts as alleged,

26 in and of itself, do not demonstrate an intent by the large pacific islander to inflict immediate

27 injury.  Accordingly, both assault claims are dismissed with leave to amend.

28

1   **II.    Defamation**

2          A claim of defamation requires the following elements: (1) publication that is; (2) false;

3   (3) defamatory: (4) unprivileged; and that (5) has a natural tendency to injure or that causes

4   special damage. *Taus v. Loftus,* 40 Cal. 4th 683, 720 (2007).  "A communication is defamatory

5   if it 'tends to harm the reputation of another as to lower him in the estimation of the community

6   or to deter third persons from associating or dealing with him.'"  *Greenfield v. America West*

7   *Airlines, Inc., et al.,* 2004 WL 2600135 \*5 (N.D. Cal.)(internal citations omitted).  "Under

8   principles of respondeat superior, an employee may be held liable for a defamatory statement

9   made by its employee." *Id.*

10          In the second amended complaint, plaintiff Webb alleges that the following statements

11   were made to him in the Olive Garden parking lot when at least eight restaurant patrons watched

12   nearby: (1) you are not welcome here for any reason due to your efforts to solicit the intimate

13   affections of Emili; and (2) "Emili had told him a lot of shit of how you are interested in fucking

14   her" and Mr. Palpallotoc was not going to let that happen.  Plaintiff Webb alleges that as the

15   statements were made to him, several of the restaurant patrons hurried to their cars and others

16   backed away from him.  He further alleges that the statements defamed his character.  While the

17   statements may have proved embarrassing to plaintiff Webb, he has not alleged that any of the

18   statements are false.  Rather, in the first statement, Mr. Palpallotoc merely expresses an opinion,

19   and in the second statement, he relays to plaintiff Webb only what Emili had told him.

20   Accordingly, the claim for defamation is dismissed with leave to amend.

21   **III.    Intentional Infliction of Emotional Distress**

22          To establish a claim for intentional infliction of emotional distress, a plaintiff must allege

23   (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the

24   probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and

25   proximate causation of the emotional distress.  *Peter E. Kiseskey, et al. v. Carpenters' Trust for*

26   *Southern Ca., et al.,* 144 Cal. App.3d 222, 229 (1983).  "The Restatement view is that liability

27   'does not extend to mere insults, indignities,, threats, annoyances, petty oppressions, or other

28   trivialities . . . There is no occasion for the law to intervene . . . where someone's feelings are

1    hurt." *Id.* at 230.

2    Plaintiff has not pled severe emotional suffering.  Rather, plaintiff makes only conclusory

3    statements, such as "[t]his incident was so emotionally distressing that Plaintiff sought the

4    assistance of Lynne Johnson, Chief of Police with the Palo Alto Police Department by writing

5    my initial correspondence on 20 Oct 2008 [attached as Exhibit], Police Chief reply on 04

6    November 2008 [attached as Exhibit], and Plaintiff finally correspondence on 10 Nov 2008

7    [attached as Exhibit]."  Plaintiff fails to specify the nature and extent of the emotional suffering

8    he endured.  Accordingly, the claim for intentional infliction of emotional distress is dismissed

9    with leave to amend.

10   **IV.    Negligent Supervision**

11   To establish a cause of action for negligent supervision, plaintiff must allege: (1) the

12   existence of a legal duty of employer to employee to use due care; (2) how the defendant

13   breached that duty; (3) how any breach proximately caused plaintiff's damages; and (4)

14   damages.[2] *Greenfield v. America West Airlines, Inc.,* 2004 WL 2600135 *6 (N.D. Cal.). *See*

15   *also, Costello v. FedEx Kinko's Office and Print Services, Inc.,* 2008 WL 4822570 *3 (C.D.

16   Cal.) ("a plaintiff must allege all of the general elements of negligence, including establishing

17   that the employer's breach of the duty to use care 'was the proximate or legal cause of the

18   resulting injury.")(internal citations omitted).

19   Plaintiff refers to defendant Darden Restaurant's Code of Business Conduct and Ethics to

20   establish the element of duty.  It states in pertinent part as follows:

21   Darden's core purpose is to nourish and delight everyone we serve, as supported
     by our core values of integrity and fairness, respect and caring, diversity, always
22   learning - always teaching, being 'of service,' teamwork and excellence.  The
     Company expects each employee to reflect these core values and exercise the
23   highest levels of integrity, ethics and objectivity in actions and relationships
     which may affect the Company . . . .  When there is doubt as to whether an action
24   is appropriate, or whether it will cause embarrassment to the Company or its
     reputation, it should be avoided.
25

26   Plaintiff alleges that the duty was breached when the restaurant manager Lisa Chorello

27

28   [2]    Plaintiff Webb refers to a claim for negligent misconduct.  Because he is proceeding *pro se,* the court presumes that in the context of how the claim is pled that plaintiff Webb seeks to allege a claim for negligent supervision.

ORDER, *page 7*

1   failed to intervene before the restaurant employees, Mr. Palpallotoc and the employee described

2   as a large pacific islander, caused him emotional distress.  In addition, he alleges that Mr.

3   Palpallotoc failed to prevent the large pacific islander from acting in a threatening manner

4   toward him.

5        Even assuming that plaintiff Webb has established a legal duty and defendant Olive

6   Garden's breach of that duty, he has not alleged causation.  Indeed, plaintiff merely demands

7   $400,000 in damages.  He does not allege how the breach proximately caused his damages.

8   Accordingly, the claim for negligent supervision is dismissed with leave to amend.

9   **IV.     Punitive Damages**

10       As before, plaintiff has not alleged that defendant Olive Garden had advance knowledge

11   of the unfitness of any of its employees, that defendant Olive Garden consciously disregarded the

12   rights and safety of others, that defendant Olive Garden ratified any wrongful conduct or was

13   personally guilty of oppression, fraud or malice.  Viewing the facts in the light most favorable to

14   plaintiff Webb, he has not established that any defendants exhibited malice, oppression or fraud.

15   Accordingly, defendant Olive Garden's motion to strike the prayer for punitive damages is

16   granted without leave to amend.

17                                      **CONCLUSION**

18       Based on the foregoing, defendant Olive Garden Italian Restaurant's motion to dismiss

19   the second amended complaint is dismissed with leave to amend.  Plaintiff Webb shall file an

20   amended complaint no later than September 30, 2009.

21       The case management conference is continued to November 17, 2009 at 2PM.  Plaintiff

22   Webb's motion to appear telephonically at the case management conference is denied as moot.

23       IT IS SO ORDERED.

24   Dated:   September 2, 2009

25                                      _____
                                        PATRICIA V. TRUMBULL
26                                      United States Magistrate Judge

27

28

ORDER, *page 8*

1   A copy of the order was mailed on September 2, 2009 to the following:

2   David Webb
    PO Box 312
3   Clearfield, Utah 84089

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28