UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID WEBB,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>OLIVE GARDEN ITALIAN RESTAURANTS, ET AL.,<br><br>　　　　Defendants. | Case No. C 08-04913 PVT<br><br>**ORDER GRANTING DEFENDANT OLIVE GARDEN ITALIAN RESTAURANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>**[Docket No. 70]** |

## INTRODUCTION

Defendant Olive Garden Italian Restaurant/Darden Restaurants moves to dismiss the third amended complaint pursuant to Rule 12(b)(6). ("Olive Garden"). Plaintiff David Webb proceeding *pro se* opposes the motion. Pursuant to Civ. L.R. 7-1(b), the motion is taken under submission and the November 3, 2009 hearing is vacated. Having reviewed the papers and considered the arguments of the parties, defendant Olive Garden's motion to dismiss the third amended complaint is granted.[1]

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

# BACKGROUND[2]

On July 2, 2008, plaintiff Webb dined with two female companions at the Olive Garden Italian Restaurant located in Palo Alto, CA. During the course of the meal, he alleges that he befriended an on-duty floor supervisor named Emili. Plaintiff Webb later escorted his two female companions to their respective cars and returned to the restaurant to speak further with Emili. Upon his return to the restaurant, plaintiff Webb spoke briefly with the hostess who notified Emili he was there. Plaintiff Webb and Emili then engaged in a conversation which lasted approximately 10 minutes.

Based on the substance of their conversation, plaintiff Webb believed that Emili was receptive to his romantic overtures and that he could return to speak with her again. Specifically, plaintiff Webb alleges that: "Emili sincerely told me that she had a boyfriend but that we could continue communicating and for the immediate future, I could come by the restaurant to see and talk with her from time to time. I left with the clear understanding that we would engage in mutual conversation until Emili felt more comfortable to exchange contact information."

On July 3, 2008, plaintiff Webb returned to the restaurant in an effort to resume contact with Emili. However, the restaurant was temporarily closed because the sewage system was not working properly and no patrons were allowed inside. At least eight patrons stood outside in the Olive Garden parking lot.

In the parking lot, plaintiff Webb informed a young male restaurant employee that he wanted to extend an invitation to Emili. The young male restaurant employee went inside the restaurant and plaintiff Webb waited outside for her approximately 20-30 feet from the restaurant entrance. Instead of seeing Emili however, a restaurant sales manager named Jacob Palpallatoc emerged and approached plaintiff Webb with his hands extended as to grab him. Plaintiff Webb alleges that he stumbled backwards to avoid any contact with him. Mr. Palpallotoc stated to plaintiff Webb "you are not welcome here for any reason due to your solicitation of wanting to

---

[2] A substantial portion of these background facts have been recounted in the court's prior orders. *See, e.g.,* Order Granting Defendant Olive Garden Italian Restaurant's Motion to Dismiss the Second Amended Complaint with Leave to Amend dated September 2, 2009. ("September 2, 2009 Order").

1  fuck Emili."

2  Plaintiff Webb alleges that "[his] thoughts were racing with fear of how to keep this man
3  from physically injuring me as I was positioning myself to be more than an arms length away
4  from any further physical contact." Mr. Palpallotoc had a "menacing look in his eyes" and
5  gestured with his hands in an "attack posture" as if he might grab the plaintiff. In response to
6  Mr. Palpallotoc's statements, plaintiff Webb states that Mr. Palpallotoc's actions caused him "to
7  fear being attacked by this man again for no logical reason."

8  Plaintiff Webb then identified himself and requested that Mr. Palpallotoc extend to Emili
9  his invitation to attend a professional event. Mr. Palpallotoc stated that "you had better forget
10 about fucking Emili and never come back here again because you will be hurt." Plaintiff Webb
11 then relates that Mr. Palpallotoc placed his "hands again in a physically attacking gesture of
12 striking my person and stated that "you had better forget about fucking Emili and never come
13 back here again because you will be hurt." Plaintiff Webb responded to Mr. Palpallotoc's
14 statements by stating that "you have no idea what your talking about, those are not my intentions
15 whatsoever." At that moment, plaintiff Webb alleges that he felt that the restaurant patrons
16 viewed him as a troublemaker, or worse, a criminal. Indeed, several of the restaurant patrons
17 scurried to their cars and other patrons stared and backed away from him.

18 Mr. Palpallotoc continued approaching plaintiff Webb which caused him to back away
19 from him repeatedly, at least two steps at a time. At that point, another person that plaintiff
20 Webb describes as a large pacific islander, and bearing a badge, emerged from the restaurant.
21 That person approached Mr. Palpallotoc and plaintiff Webb and pounded his closed fist into his
22 other open hand. Mr. Palpallotoc informed plaintiff Webb that that person was his back up.
23 Plaintiff Webb realized he was being outnumbered and was in "imminent fear of civil assault."
24 He stated to them, "[the pacific islander] was assaulting me by his threaten [*sic*.] stare in a
25 threaten way and needed to stop his actions immediately, because I have not done and/or said
26 anything threaten to deserve this type of treatment in a public setting." Plaintiff Webb alleges
27 that the person he describes as a large pacific islander continued with his threatening and
28 ominous behavior throughout the course of his 5-10 minute conversation with Mr. Palpallotoc.

Plaintiff Webb also alleges that he moved away at least three times from Mr. Palpallotoc

to avoid any physical contact with him.  In addition, he was blocked by Mr. Palpallotoc in the front and by the person described as a large pacific islander to his right.  As a result, plaintiff Webb was fearful and prevented from freely walking away.

After recalling his prior training (from college and work) in responding to potentially violent confrontations, plaintiff Webb asked both Mr. Palpallotoc and the person described as a large pacific islander for their respective business cards.  Mr. Palpallotoc then glanced at a woman standing nearby and went inside the restaurant to obtain his business card.  The person described as a large pacific islander remained standing nearby which prevented plaintiff Webb from leaving the area.  Plaintiff Webb states that "fear precluded turning my back to him to try leaving in anticipation of an unseen assault/battery."  Indeed, plaintiff Webb alleges that the person described as a large pacific islander continued his menacing behavior by repeatedly pounding his closed fist into his other open hand.

Upon Mr. Palpallotoc's return, plaintiff Webb asked that he inform his co-worker to cease his threatening behavior.  Mr. Palpallotoc motioned with his head and hand to the person described as a large pacific islander and both of them started to approach the plaintiff "in a quick step charge with extreme physical attack gestures."

At that moment, the same woman, who had been standing nearby and watching, instructed both Mr. Palpallotoc and the person described as a large pacific islander to go inside the restaurant.  She stated, " . . . [I am the] General Manager of the restaurant and knew I had to step in at that moment before things got anymore out of hand because I am responsible for their actions . . . ."  The woman identified herself to plaintiff Webb as Lisa Chorello.  Defendant Chorello told plaintiff Webb that she would talk to Mr. Palpallotoc and the person described as a large pacific islander about their unlawful and unprofessional behavior.  Plaintiff Webb informed her that he would write the owners of the restaurant about the incident.  She then provided her name to plaintiff Webb by writing it on the back of Mr. Palpallotoc's business card.

Pursuant to the order granting defendant Olive Garden's motion to dismiss the second amended complaint with leave to amend dated September 2, 2009, plaintiff Webb timely filed a third amended complaint alleging claims of assault, false imprisonment, defamation, intentional infliction of emotional distress and negligent supervision.  ("September 2, 2009 Order").

ORDER, *page 4*

1  Plaintiff Webb alleges jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.[3]  He seeks damages
2  in excess of $1 million.

## LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990) and *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the allegations in a complaint are taken as true and construed in the light most favorable to the nonmoving party.  *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  "A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief."  *Id.*  Generally, a motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted.  *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).  *See also, McGlinchy v. Shell Chem Co.,* 845 F.2d 802, 810 (9th Cir, 1988).  The complaint must aver "[f]actual allegations [] enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,* 500 U.S. 544, 545, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *John D. Ashcroft, et al. v. Javaid Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1941, 173 L.Ed.2d 868 (2009).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  *Id.*

---

[3]  Plaintiff Webb has declared citizenship in various states throughout the course of this action, including Hawaii, South Dakota and Utah.  *See, e.g.,* Complaint for Damages filed October 28, 2008 (Docket No. 1)(declaring citizenship in the state of Hawaii); Supplemental Declaration of Citizenship filed May 22, 2009 (Docket No. 62)(declaring citizenship in the state of Utah); Third Amended Complaint filed September 14, 2009 (Docket No. 69)(declaring citizenship in the state of South Dakota).

"[L]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Additionally, a federal court may liberally construe the "inartful pleading" of parties appearing *pro se. Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980).

## DISCUSSION

In the third amended complaint, plaintiff Webb alleges the following claims: (1) assault; (2) false imprisonment; (3) defamation; (4) intentional infliction of emotional distress; and (5) negligent supervision. Defendant Olive Garden moves to dismiss all of the claims alleged therein. Each of the claims is considered below.

### I.   Assault

"Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Lowery v. Standard Oil Co. of California,* 63 Cal. App. 2d 1, 6-7 (1944). *See also, Medora v. City & County of San Francisco,* 2007 WL 2522319 *5 (N.D. Cal.)); and *De La Cerra Frances v. De Anda,* 224 Fed. Appx. 637, 639 (9th Cir. 2007). The tort of assault is complete when the anticipation of harm occurs. *Kiseskey v. Carpenters' Trust for Southern California,* 144 Cal. App. 3d 222, 232 (1983). "A civil action for assault is based on an invasion of the right of a person to live without being put in fear of personal harm." *Lowery v. Standard Oil Co. of California,* 63 Cal. App. 2d at 7.

Here, plaintiff Webb alleges that Mr. Palpallotoc first approached him with his arms extended as if to grab him which caused plaintiff to take two steps backwards in an effort to avoid any contact with him. He states that "[h]is thoughts were racing with fear of how to keep this man from physically injuring me as I was positioning myself to be more than an arm's length away from any further physical contact." Plaintiff Webb alleges that Mr. Palpallotoc had a "menacing look in his eyes" and gestured in an "attack posture" as if he might grab the plaintiff. Plaintiff Webb also alleges that Mr. Palpallotoc stated to him that "you had never come back here again because you will be hurt." Based on the alleged statements made by Mr. Palpallotoc at that time, the likelihood of any injury to plaintiff Webb would occur at a later date "if you [] [] come back here again." Moreover, moments later, plaintiff Webb was fearless enough to request that Mr. Palpallotoc provide him with a business card. As such, plaintiff Webb has not alleged that Mr. Palpallotoc demonstrated an intent to inflict immediate injury.

ORDER, *page 6*

1  The allegations regarding the fear that plaintiff experienced are merely conclusory statements
2  and not sufficient to support a claim for assault against Mr. Palpallotoc.
3       Plaintiff Webb also alleges that the person he describes as a large pacific islander
4  committed an assault against him.  Specifically, he alleges that the large pacific islander
5  approached him and repeatedly pounded his clenched fist into his other open hand and later
6  stood nearby during his 5-10 minute conversation with Mr. Palpallotoc.  Plaintiff alleges that "he
7  was assaulting me with his threaten stare in a threaten way . . . . "  Again, the facts as alleged do
8  not demonstrate an intent by the person described as a large pacific islander to inflict immediate
9  injury.  Pounding a closed fist into an open hand and a "threaten stare" are insufficient facts to
10 draw an inference that the person described as a large pacific islander intended to inflict
11 immediate injury.  Plaintiff Webb makes only a conclusory statements such as "fear precluded
12 turning my back to him to try leaving in anticipation of an unseen assault/battery."  Accordingly,
13 both assault claims are dismissed without further leave to amend.

14 **II.     False Imprisonment**

15      "False imprisonment is the unlawful restraint if another's liberty."  *Scofield v. Critical*
16 *Air Medicine, Inc., et al.,* 45 Cal.App. 4th 990, 999, 52 Cal. Rptr.2d 915, 919 (1996).  The tort
17 and the crime are identically defined.  *Id.* at 1001.  "All that is necessary to make out a charge of
18 false imprisonment is that the individual be restrained of his liberty without any sufficient
19 complaint or authority therefor, and it may be accomplished by words or acts which such
20 individual fears to disregard . . . the use of actual physical force is not necessary."  *Ware v.*
21 *Dunn, et al.,* 80 Cal.App.2d 936, 183 P.2d 128 (1947).
22      Plaintiff Webb alleges that Mr. Palpallotoc blocked him from the front and the person
23 described as a large pacific islander blocked him to the right.  He further alleges he was fearful
24 and was prevented from freely walking away.  Based on these alleged facts, plaintiff Webb has
25 not sufficiently alleged restraint of his liberty.  First, plaintiff Webb was never physically
26 restrained and second, he never sought to leave the area by backing away (as before when he
27 first encountered Mr. Palpallotoc).  Indeed, as the alleged events unfolded, plaintiff Webb
28 requested that Mr. Palpallotoc  provide him with a business card.  Instead of stating to the person
described as a large pacific islander, to make sure he doesn't leave, Mr. Palpallotoc merely went

1  inside the restaurant to obtain a business card as plaintiff had requested.  Plaintiff Webb's
2  allegations that he was prevented from leaving and that he was fearful are merely conclusory and
3  are insufficient to support a claim for false imprisonment.
4        Similarly, when the person described as a large pacific islander remained behind and
5  repeatedly punched his closed fist into his other open hand as Mr. Palpallotoc sought to retrieve
6  his business card, plaintiff Webb never sought to leave the area now that the path in front of him
7  had cleared.  Nor did plaintiff Webb ever seek the assistance of the woman standing nearby or
8  any of the other patrons standing in the parking lot.  The person described as the large pacific
9  islander is not alleged to have said anything to plaintiff except to have had a "threaten stare."
10 Again, plaintiff Webb provides only conclusory statements regarding his alleged fear.
11 Accordingly, plaintiff Webb has not established the requisite element to establish a claim for
12 false imprisonment and defendant Olive Garden's motion to dismiss that claim is granted
13 without further leave to amend.

14 **III.   Defamation**

15       A claim of defamation requires the following elements: (1) publication that is; (2) false;
16 (3) defamatory: (4) unprivileged; and that (5) has a natural tendency to injure or that causes
17 special damage.  *Taus v. Loftus,* 40 Cal. 4th 683, 720 (2007).  "A communication is defamatory
18 if it 'tends to harm the reputation of another as to lower him in the estimation of the community
19 or to deter third persons from associating or dealing with him.'"  *Greenfield v. America West*
20 *Airlines, Inc., et al.,* 2004 WL 2600135 *5 (N.D. Cal.)(internal citations omitted).  "Under
21 principles of respondeat superior, an employee may be held liable for a defamatory statement
22 made by its employee."  *Id.*

23       In the third amended complaint, plaintiff Webb alleges that the following statements were
24 made to him in the Olive Garden restaurant parking lot as at least eight restaurant patrons
25 watched nearby: (1) you are not welcome here for any reason due to your solicitation of wanting
26 to fuck Emili; (2) and "you had better forget about fucking Emili and never come back here
27 again because you will be hurt."  Plaintiff Webb alleges that as the statements were made to him,
28 several of the restaurant patrons hurried to their cars and others stared and backed away from
   him.  He alleges that the statements defamed his character.  While the statements may have

ORDER, *page 8*

proven embarrassing to plaintiff Webb, he has not alleged that any of the statements are false. Rather, in the first statement, Mr. Palpallotoc merely expresses an opinion and relays what was presumably disclosed to him by Emili, and in the second statement, he conveys his own message to plaintiff.  Neither statement is alleged to have been false.  Accordingly, the claim for defamation is dismissed without leave to amend.

**IV.     Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *Peter E. Kiseskey, et al. v. Carpenters' Trust for Southern Ca., et al.,* 144 Cal. App.3d 222, 229 (1983).  "The Restatement view is that liability 'does not extend to mere insults, indignities,, threats, annoyances, petty oppressions, or other trivialities . . . There is no occasion for the law to intervene . . . where someone's feelings are hurt." *Id.* at 230.

Plaintiff has not pled severe emotional suffering.  He only makes conclusory statements, such as "[t]his incident was so emotionally distressing that Plaintiff sought the assistance of Lynne Johnson, Chief of Police with the Palo Alto Police Department by writing my initial correspondence on 20 Oct 2008 [attached as Exhibit], Police Chief reply on 04 November 2008 [attached as Exhibit], and Plaintiff finally correspondence on 10 Nov 2008 [attached as Exhibit]."  He also alleges recurring nightmares.  As plead, these facts are insufficient to support a claim for intentional infliction of emotional distress.  Accordingly, the claim for intentional infliction of emotional distress is dismissed without further leave to amend.

**V.      Negligent Supervision**

To establish a cause of action for negligent supervision, plaintiff must allege: (1) the existence of a legal duty of employer to employee to use due care; (2) how the defendant breached that duty; (3) how any breach proximately caused plaintiff's damages; and (4) damages. *Greenfield v. America West Airlines, Inc.,* 2004 WL 2600135 *6 (N.D. Cal.). *See also, Costello v. FedEx Kinko's Office and Print Services, Inc.,* 2008 WL 4822570 *3 (C.D. Cal.) ("a plaintiff must allege all of the general elements of negligence, including establishing

ORDER, *page 9*

that the employer's breach of the duty to use care 'was the proximate or legal cause of the resulting injury.")(internal citations omitted).

Plaintiff refers to defendant Darden Restaurant's Code of Business Conduct and Ethics to establish the element of duty. It states in pertinent part as follows:

> Darden's core purpose is to nourish and delight everyone we serve, as supported by our core values of integrity and fairness, respect and caring, diversity, always learning - always teaching, being 'of service,' teamwork and excellence. The Company expects each employee to reflect these core values and exercise the highest levels of integrity, ethics and objectivity in actions and relationships which may affect the Company . . . . When there is doubt as to whether an action is appropriate, or whether it will cause embarrassment to the Company or its reputation, it should be avoided.

Plaintiff alleges that the duty was breached when the restaurant manager Lisa Chorello failed to intervene before restaurant employees, Mr. Palpallotoc and the person described as a large pacific islander, caused him severe emotional distress, including recurring nightmares. He further alleges that Mr. Palpallotoc failed to prevent the person described as a large pacific islander from acting in a threatening manner toward him.

Except for perhaps breach, plaintiff Webb has not established the requisite elements to plead this claim. As an initial matter, plaintiff Webb has not established a legal duty by the restaurant or its manager, Lisa Chorello. In the third amended complaint, he relies on the Darden Code of Business Conduct and Ethics. However, the Darden Restaurant Code of Business Conduct and Ethics specifies that it applies to "everyone we serve." That evening, the Olive Garden Italian Restaurant was not serving a meal or other hospitality to plaintiff Webb. Indeed, plaintiff Webb alleges that he merely stopped by the restaurant to extend a professional invitation to Emili. In addition, plaintiff Webb has not properly alleged causation. Notwithstanding his allegations of recurring nightmares and $400,00 in damages, plaintiff Webb fails to allege how the alleged breach proximately caused his damages. Accordingly, the claim for negligent supervision is dismissed without further leave to amend.

In addition, plaintiff Webb asserts a claim for negligent supervision pursuant to California Civil Code § 1714. Section 1714 states in pertinent part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has,

ORDER, *page 10*

willfully or by want of ordinary care, brought the injury upon himself or herself. The design, distribution, or marketing of firearms and ammunition is not exempt from the duty to use ordinary care and skill that is required by this section. The extent of liability in these cases is defined by the Title on Compensatory Relief.

Plaintiff Webb alleges that as the restaurant manager, Lisa Chorello, is liable for premises liability because she failed to intervene earlier. Specifically, he alleges that she had "cardinal knowledge" of intent by both Mr. Palpallotoc and the person described as a large pacific islander. And that she merely stood by and watched them inflict "intentional torts."

Even construing the facts in the light most favorable to plaintiff, the court cannot draw the reasonable inference that sufficient facts have been alleged to support this claim. Other than using her own observations, plaintiff has not alleged how Lisa Chorello would have had knowledge of the others' intent. In addition, the civil code section cited above references liability for an injury. Plaintiff has not alleged any injuries. Accordingly, this claim for negligent supervision is dismissed without further leave to amend.

## CONCLUSION

Based on the foregoing, defendant Olive Garden Italian Restaurant's motion to dismiss the third amended complaint is granted. The above-captioned action shall be dismissed with prejudice. Judgment shall be entered in favor of defendants and the clerk shall close the file.

Plaintiff Webb's motion for sanctions filed on or about October 27, 2009 is denied as moot and the November 17, 2009 case management conference is vacated.

IT IS SO ORDERED.

Dated:   October 29, 2009

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge

A copy of the order was mailed on October 30, 2009 to the following:

David Webb
PO Box 312
Clearfield, Utah 84089